**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MOHAMMED ABUHARBA,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**ANTHONY WILLS, TERRI WINGERTER,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 3:23-cv-01138-GCS** |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Plaintiff Mohammed Abuharba, an inmate of the Illinois Department of Corrections ("IDOC"), brings this suit under 42 U.S.C. § 1983. (Doc. 1). Abuharba alleges that Defendants Anthony Wills and Terri Wingerter violated the Eighth Amendment by subjecting him to unconstitutional conditions of confinement after he contracted Covid-19. For the reasons set forth below, the Court **GRANTS** Defendants' Motion for Summary Judgment.

### PROCEDURAL BACKGROUND

Abuharba filed this lawsuit on April 5, 2023. (Doc. 1). After a screening order and after Abuharba filed an amended complaint, the case proceeded on one claim:

**Count 4:** **Eighth Amendment deliberate indifference claim against [Wills and Wingerter] for the unconstitutional conditions Abuharba experienced while in quarantine.**

(Doc. 11, p. 4, 8).[1] Defendants dispute these claims and have moved for summary judgment as to each of them. (Doc. 97, 98). Abuharba filed a Response in Opposition on December 2, 2025. (Doc. 102). Defendants filed a Reply in Support of their Motion for Summary Judgment on February 3, 2026. (Doc. 107). Accordingly, this matter is ripe for decision.

## FACTUAL BACKGROUND

The following facts are taken from the record and presented in the light most favorable to Abuharba, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

Abuharba is currently incarcerated at Lawrence Correctional Center, but at all times relevant to this case, he was incarcerated at Menard Correctional Center ("Menard"). (Doc. 1). Wills has been the Chief Administrative Officer ("CAO") at Menard since April 1, 2020. (Doc. 98-2, p. 2). Wingerter has been a correctional clerk at Menard since 2014. (Doc. 98-3, p. 6).

On November 30, 2020, Abuharba began to suffer from symptoms of Covid-19. (Doc. 98-1, p. 7, 12). His symptoms worsened over the course of the day, and by the second shift —between 3:00 PM and 11:00 PM — Abuharba was bedridden. *Id*. at p. 12. Abuharba requested to see a med tech but did not hear back. *Id*. at p. 12-13. Abuharba asked to see a med tech again the next morning, at which point Officer James, the guard on duty, took him to be tested for Covid. *Id.* at p. 13. The test came back positive. *Id.*

1 The Court severed some claims into a separate case. (Doc. 11, p. 8).

Officer James then escorted Abuharba to the South Cell House, which served as a medical isolation unit at the time. *Id*. at p. 13-14.

Abuharba was housed in the South Cell House from December 1, 2020, through December 16, 2020. (Doc. 98-1, p. 13, 15; Doc. 98-5 p. 2). Abuharba did not have a cellmate while he was in quarantine. (Doc. 98-1, p. 15). His cell had a bed with sheets and blankets, a sink, and a toilet. *Id*. Abuharba also saw a medical worker at least once per day. *Id*. Meals were provided three times a day. (Doc. 98-1, p. 62).

Abuharba filed a grievance about his conditions of confinement in quarantine on January 13, 2021. (Doc. 1, p. 28-32). He proceeded through the administrative grievance process until the Illinois Administrative Review Board ("ARB") rejected his appeal on the merits on April 24, 2021, at which point Abuharba had exhausted his administrative remedies. *Id*. Abuharba filed this lawsuit on April 5, 2023, slightly less than two years later. (Doc. 1, p. 1).

## LEGAL STANDARDS

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986)); FED. R. CIV. PROC. 56(a). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 567 (7th Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). This Court must consider the entire record, drawing reasonable inferences and resolving

factual disputes in favor of the non-movant. *See Fletcher v. Doig,* 145 F.4th 756, 764 (7th Cir. 2025). *See also Bishop v. Air Line Pilots Association International,* 5 F.4th 684, 693 (7th Cir. 2021) (stating that "we are not required to draw every conceivable inference from the record . . . but 'only those inferences that are reasonable.'") (citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in factfinding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Knight v. Wiseman,* 590 F.3d 458, 463 (7th Cir. 2009); *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted); *Smith v. City of Janesville,* 40 F.4th 816, 821 (7th Cir. 2022); *Doxtator v. O'Brien,* 39 F.4th 852, 860 (7th Cir. 2022). In other words, "inferences relying on mere speculation or conjecture will not suffice." *DiPerna v. Chicago School of Professional Psychology,* 893 F.3d 1001, 1006 (7th Cir. 2018) (citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."). Instead, the non-moving

party must present "definite, competent evidence to rebut the [summary judgment] motion." *Burton v. Kohn L. Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019) (citation omitted).

## Discussion

### A. Abuharba's claim is not time-barred.

Defendants assert that Abuharba's claim against them is time-barred because Abuharba filed suit after the applicable statute of limitations had run. (Doc. 98, p. 8-9). Because Section 1983 does not contain its own statute of limitations, Section 1983 claims are governed by the law of the state where the alleged violation occurred. *See Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001) (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)). Abuharba's claims arise out of conduct in Illinois, so the Illinois two-year statute of limitations applies. *See Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). The tolling rules of Illinois also apply. Section 5/13-216 tolls the statute of limitations while a prisoner completes the administrative grievance process. *See* 735 ILL. COMP. STAT. § 5/13-216; *see also Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012); *Walker v. Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008); *Johnson*, 272 F.3d at 521.

Defendants do not dispute that the statute of limitations was tolled from January 14, 2021, when Abuharba filed a grievance, through April 26, 2021, when he completed the administrative grievance process.[2] (Doc. 98, p. 10). However, according to

---

2 Defendants assert that the date on which the statute of limitations was tolled was January 14, 2021, because that is the date that Menard received Abuharba's grievance, rather than the day before, which is when Abuharba put the grievance in the prison mail system. (Doc. 98, p. 10; Doc. 1, p. 25). While the one-day discrepancy is not dispositive, federal courts in Illinois generally consider a grievance filed when it is placed in the mail rather than when it is received. *See, e.g.*, *Mayfield v. McClure*, Case No. 23-cv-1642-DWD,

Defendants, the statute of limitations began to run on December 1, 2020, when Abuharba was moved into the South Cell House, and continued to run until January 14, 2021. (Doc. 98, p. 9). After accounting for this tolled period, Defendants claim the statute of limitations expired on March 13, 2023, twenty-three days before Abuharba filed suit. *Id*. at p. 10. Abuharba responds that his confinement in the South Cell House was a continuing violation that did not accrue until the violation ended and that the statute of limitations did not begin to run until after he exhausted his administrative remedies. (Doc. 102, p. 2-3). Using Abuharba's calculation, the statute of limitations began to run on April 26, 2021, and did not run out until April 26, 2023, three weeks *after* he filed suit *Id*. at p. 3. There are thus two issues to be decided: when Abuharba's claim accrued and whether the statute of limitations was tolled between the time the claim accrued and January 13, 2021. The Court agrees with Abuharba on both issues and concludes that the statute of limitations did not expire before Abuharba filed suit.

First, the Court finds that Abuharba's claim accrued on December 16, 2020. Defendants assert that Abuharba's claim accrued on December 1, 2020, when Abuharba learned of the allegedly unlawful conduct. (Doc. 98, p. 8, 9). The statute of limitations then ran until January 13, 2021. This is incorrect. Abuharba alleges a continuing violation of the Eighth Amendment for the period that Abuharba was in the South Cell House, *i.e.*, from December 1 through December 16. (Doc. 13, p. 4; Doc. 98-5, p.2). A violation is

---

2024 WL 4534148, at *6 (S.D. Ill. Oct. 21, 2024); *Warren v. Jeffreys, et al.*, Case No. 3:22-cv-00508-GCS, 2023 WL 6605433, at *6 (S.D. Ill. Oct. 10, 2023); *Taylor v. Brown*, 787 F.3d 851, 858-859 (7th Cir. 2015).

continuing where "it would be unreasonable to require or even permit to sue separately over every incident." *Heard v. Sheahan*, 253 F.3d 316, 319-320 (7th Cir. 2001). A claim based on a continuing violation accrues on the *last* date the violation occurs, not the first date it occurs. *See Turley*, 729 F.3d at 651. The alleged violation in this case plainly falls into this category as it would be unduly burdensome on the parties and on the Court to require Abuharba to file a different lawsuit for every day that he believed his conditions of confinement were unconstitutional. Furthermore, the Seventh Circuit held in *Heard* that the doctrine of continuing violation delays accrual of a claim rather than tolling the statute of limitations. *See Heard*, 253 F.3d at 319; *Turley*, 729 F.3d at 651. Abuharba's claim accrued on December 16, 2020, when he was transferred out of the South Cell House and the continuing violation ended.

Second, the Court finds the statute of limitations did not begin to run until Abuharba had exhausted his administrative remedies. Whether the statute of limitations runs between the date that an inmate's claim accrues and the date that they file a grievance is an open question in the Seventh Circuit. *See, e.g.*, *Schlemm v. Pizzala*, 94 F.4th 688, 690 (7th Cir. 2024) (stating that "[w]e pause to acknowledge that our precedent is inconsistent on whether the gap between claim accrual and grievance filing is included in the tolling period. . . . We will need to address this question, but given Appellees' waiver, we leave it for another day."). Since *Schlemm*, district courts have found that the statute of limitations is tolled between accrual and the filing of a grievance, although the

issue was not dispositive in any of the cases that the Court was able to locate.[3] Here, the issue is dispositive. If the statute of limitations was not tolled between December 16, 2020, and January 13, 2021, then Abuharba's claim is time-barred.

The Court finds that the statute of limitations was tolled between accrual and the date that Plaintiff filed a grievance. Judge Hamilton's concurrence in *Schlemm* is instructive. In analyzing Wisconsin's tolling statute, which is identical to the Illinois tolling statute,[4] Judge Hamilton explained that the plain language of the statute requires that the period between accrual and the filing of a grievance be tolled. The statute (in both Wisconsin and Illinois) says that "[w]hen the commencement of an action is stayed by injunction, order of a court, or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action." 735 ILL. COMP. STAT. § 5/13-216. Section 1997e(a) of the Prisoner Litigation Reform Act ("PLRA") bars a prisoner from bringing suit under federal law until they have exhausted all administrative remedies that are available to them. In other words, the statute prohibits commencement of an action. It follows then that the statute of limitations is tolled until a prisoner exhausts administrative remedies.[5] Accordingly, the

---

3 *See Higgins v. Jeffreys*, No. 3:23 C 50038, 2026 WL 1266186, at *14 (N.D. Ill. May 8, 2026); *Faber v. Siddiqui*, Case No. 3:23-CV-3628-MAB, 2026 WL 35070, at *4 and n.4 (S.D. Ill. Jan. 6, 2026); *Johnson v. Rue*, Case No. 3:21-cv-00779-NJR, 2025 WL 2771329, at *3 and n.2 (S.D. Ill. Sept. 26, 2025).

4 *Compare* Wis. Stat. § 893.23 with 735 ILL. COMP. STAT. § 5/13-216.

5 It is possible that an inmate could wait to file suit until after they have been released, thus avoiding the PLRA's exhaustion requirement and without running afoul of the statute of limitations. However, the Seventh Circuit has observed that the PLRA

Court finds that the statute of limitations was tolled between December 16, 2020, and January 14, 2021, and did not begin to run until April 26, 2021. Because Abuharba filed this suit on April 5, 2023, less than two years after that date, his claim is not time-barred.

**B. Abuharba impermissibly alleged *Monell* liability in his Response.**

Abuharba's Response appears to construe his claim against Wills as a *Monell* claim seeking to hold him responsible for enforcing a policy that caused a constitutional deprivation. (Doc. 102, p. 4). However, the Screening Order in this case did not address a *Monell* claim. (Doc. 11, p. 4-5, 7). It also said that any claim not addressed in the Screening Order was dismissed without prejudice for failure to state a claim. *Id*. at p. 5. If Abuharba wanted to bring a claim concerning an IDOC policy, he had to move for leave to file an amended complaint raising that claim. He cannot raise this theory in response to Defendants' Motion for Summary Judgment. Accordingly, the Court will not consider Abuharba's contention that Wills is liable for an alleged policy that resulted in a constitutional deprivation.

Abuharba also asserts that the existence of a policy can support an inference of actual knowledge of a dangerous condition of confinement. (Doc. 102, p. 7) (citing *Est. of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017)). *Simpson*, however, rejected precisely that proposition. *See, e.g.*, *Simpson*, 863 F.3d at 746 (stating that "[t]he Estate argues that a

---

distinguishes between a prisoner and a felon who has been released and that the rising opportunity cost of litigation following release means that there is less need for special precautions against weak suits brought by former prisoners. *See Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998); *Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004). The risk of a flood of litigation from inmates who fail to exhaust their administrative remedies but who bring suit after their release appears remote.

jury could use the policy as circumstantial evidence of the defendants' knowledge of the risk. It is mistaken."). The policy that Abuharba alleges Wills implemented is not evidence that Wills had actual knowledge of unconstitutional conditions of confinement.

**C. Wills and Wingerter are entitled to summary judgment.**

Although "the Constitution does not mandate comfortable prisons," it does mandate humane ones. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment imposes duties on prison officials to "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer*, 511 U.S. at 832. An official who fails to uphold these duties violates the Eighth Amendment upon exhibiting "deliberate indifference to a substantial risk of serious harm to an inmate." *Id.* at 828.

This deliberate indifference standard includes "both an objective and subjective component." *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018); *see also Farmer*, 511 U.S. at 834. A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning "that they den[ied] the inmate 'the minimal civilized measure of life's necessities,' creating an excessive risk to the inmate's health and safety." *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017) (internal citation omitted) (quoting *Rhodes*, 452 U.S. at 347). Second, in covering the subjective component of the inquiry, the inmate must show that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate. See *Farmer*, 511 U.S. at 834; *Williams v. Shah*, 927 F.3d 476, 480 (7th Cir. 2019). It is not enough to show that an official should have known of an excessive risk; they

must both be aware of the facts from which the inference can be drawn *and* draw the inference. *See Farmer*, 511 U.S. at 837; *Olson v. Morgan*, 750 F.3d 708, 713 (7th Cir. 2014).

Wills and Wingerter are each entitled to summary judgment because no reasonable jury could conclude that they knew of and disregarded an excessive risk of serious harm to Abuharba. Because this issue is dispositive, the Court addresses it first and does not reach the remainder of the analysis.

*i. Wills*

Wills is entitled to summary judgment because there is no evidence to suggest that he had actual knowledge of any of the conditions of confinement that Abuharba experienced in quarantine. Abuharba claims that he was not permitted to shower, that he was not provided hot water to wash with, that he did not have access to sanitary drinking water, and that the South Cell House was not adequately ventilated. (Doc. 102, p. 22-23). But he does not point to any evidence that Wills knew about any of these issues. Abuharba concedes that he never spoke to Wills at all, let alone about his conditions of confinement. *See, e.g.*, (Doc. 98-1, p. 20) (stating the following: "Q. In your time at Menard, did you ever see or speak with Warden Wills? **A. No.**") (emphasis added). Emails in the record indicate that employees at Menard took steps to ensure that the South Cell House was fit to house inmates if necessary and that Wills was informed by an engineer at Menard that the South Cell House could be safely used for Covid-19 quarantine housing by early April 2020. (Doc. 102, p. 109-112). This evidence does not permit an inference that Wills knew of the conditions that Abuharba experienced.

Abuharba's arguments in support of an inference that Wills had actual knowledge

of the poor conditions in the South Cell House are also not persuasive. Abuharba claims that Wills knew the South Cell House had been closed for approximately two years prior to its use in 2020 and that Wills knew that "concerns had been raised" about the water in the building. (Doc. 102, p. 8). Abuharba does not point to evidence that Wills knew about other conditions of confinement. *Id.* The fact that Wills knew the building had been closed does not mean that any of the conditions Abuharba experienced were present at that time, let alone that they were present during Abuharba's time in quarantine or that Wills was aware of them.

Abuharba's only other evidence that Wills knew about water problems in the building comes from a couple of emails.[6] The first is dated March 4, 2019, from the Chief Engineer at Menard to another Menard employee. (Doc. 102, p. 110). The email says that Phase 1 of a plumbing project in the South Cell House was substantially complete and that Phase 2 of the project would be completed by May 2020, assuming that the South Cell House remained vacant in the meantime. *Id*. Even assuming that Phase 2 was not complete by May 2020,[7] nothing about the email indicates that water in the South Cell House was not potable, it was sent a year before Wills assumed the role of Chief Administrative Officer, and Wills was not a recipient of the email.

---

6 Abuharba also claims that Wills approved of a policy that prohibited quarantined inmates from showering, but the policy to which Abuharba refers provides that quarantined inmates were to be offered showers at least three times per week. (Doc. 102, p. 103; Doc. 98-4, p. 2). Because Abuharba's claim is contradicted by his own filing, the Court will not address this claim further.

7 Wills's interrogatory responses indicate that the work was complete "by 2020." (Doc. 98-2, p. 13).

The second email, dated March 27, 2020, notes that the water in the South Cell House had not been used in over a year and that it might take some work to ensure it was working properly. (Doc. 102, p. 111). This email was not sent to Wills.

Finally, the third email, also dated March 27, 2020, was sent to Wills. (Doc. 102, p. 112). However, it indicated that plumbers had examined the South Cell House and could ensure that two sections of the building were fit for use within a week or two. *Id.* The email also confirmed that the water supply to the building was turned on, that the heat worked, and that the HVAC system would prevent air recirculation. *Id*. Contrary to Abuharba's assertions, it is not reasonable to infer that Wills had actual knowledge of water problems (or any other problems) in the South Cell House in 2020 based on these emails.

Abuharba also insists that Wills's responses to interrogatories were inconsistent, which shows that he knew about the conditions in the South Cell House. Abuharba is wrong. First, Abuharba claims that Wills said that the South Cell House had been inoperable since late 2021 or early 2022 but later said that it had been closed since 2018. (Doc. 102, p. 9). That is a misstatement of Wills's answers. When Abuharba asked if the South Cell House was "currently inoperable," Wills said that it was inoperable and had been since late 2021 or early 2022. (Doc. 98-2, p. 2). When Abuharba asked if the South Cell House was closed in 2018, Wills responded that it was. *Id.* at p. 7. Wills did not lie; the building was closed twice.

Similarly, Abuharba insists that Wills lied when he said that Menard stopped using the South Cell House as a quarantine facility because it could not house all the

Covid-positive inmates even though the building did not house close to its maximum capacity during the relevant timeframe. (Doc. 102, p. 9). Again, this misstates Wills's answers. Wills said that the most inmates housed in quarantine at the South Cell House was eighty-seven people. (Doc. 98-2, p. 21). Wills also explained that Menard shifted from contact tracing for Covid-19 to mass testing, and when it did, it discovered that there were more infected inmates than the South Cell House could contain. (Doc. 98-2, p. 4). These answers are not inconsistent. Instead, they reflect a response to a rapidly spreading disease. The Court cannot conclude or infer that Wills had actual knowledge of unconstitutional conditions of confinement from these interrogatory responses. No reasonable jury could find that Wills actually knew about any alleged unconstitutional conditions of confinement based on the evidence presented by Abuharba. As such, Wills is entitled to summary judgment.

*ii. Wingerter*

Wingerter is also entitled to summary judgment. Abuharba argues the conditions of confinement in the South Cell house were so obvious that Wingerter had to have known about them. (Doc. 102, p. 10) (citing *Balle v. Kennedy*, 73 F.4th 545, 553 (7th Cir. 2023)). Establishing deliberate indifference based on the obviousness of a risk requires "significant evidence." *Id*. And even where the risk is obvious, "there must also be evidence that the defendant was actually 'exposed to information concerning the risk.'" *Balle*, F.4th at 553. Abuharba has neither presented significant evidence that the conditions in the South Cell House were obvious nor shown that Wingerter was exposed to information concerning an excessive risk.

Abuharba contends that Wingerter must have known about the conditions of confinement because she must have known that the South Cell House was closed from 2018 to 2020. (Doc. 102, p. 9). This is simply too big a leap to make. The mere fact that the South Cell House was closed does not show that it was unfit for use in December 2020. As noted above, officials at Menard confirmed that it *was* fit for use months earlier, and the only evidence that Abuharba can point to that might suggest otherwise are emails that affirm that the facility could house quarantined inmates. But these emails do not approach the type of "significant evidence" that would be necessary to permit an inference of deliberate indifference based on the obviousness of the risk. *See Balle*, 73 F.4th at 553. *See also Sinn v. Lemmon*, 911 F.3d 412, 423 (7th Cir. 2018) (noting that two affidavits and an expert report were not significant evidence to indicate that the risk was obvious).

Nor is there any indication that Wingerter was exposed to information concerning the risks of which Abuharba complains. Wingerter was a clerical worker during the relevant timeframe. (Doc. 98-3, p. 11). She had no discretion in where she assigned inmates who tested positive for Covid-19. (Doc. 102, p. 73-74). Instead, she merely assigned them to the next cell in a rotation. *Id*. Crucially, there is no evidence to indicate that she worked in or visited the South Cell House or that she interacted with inmates, and she did not receive the emails that discussed using the South Cell House for Covid housing. (Doc. 102, p. 109-112). Abuharba further admits that he had never spoken to Wingerter. *See, e.g.*, (Doc. 102, p. 20) (stating that "Q. Okay. And did you see or speak with, again at Menard, with Terri Wingerter during your time there? **A. No, I did not.**") (emphasis added). Even assuming that the conditions of confinement in the South Cell

House were obvious, Abuharba has not shown that Wingerter was exposed to any information about these conditions. Thus, she cannot have had actual knowledge of those conditions and cannot have acted with deliberate indifference. Wingerter is thus entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 97). The Court DIRECTS the Clerk to enter judgment for Defendants and close the case.

**IT IS SO ORDERED.**

**DATED: September 29, 2026.**

Digitally signed by Judge Sison
Date: 2026.09.29 12:40:56 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**